# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KHOU THOR, | ) | 1:04cv6701 LJO DLB |
| | ) | |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| Plaintiff, | ) | REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Khou Thor ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendation to the District Court.[1]

---

[1] Due to the recent appointment of Judge Lawrence J. O'Neill to the position of United States District Judge, this case was reassigned to the Honorable Dennis L. Beck on February 22, 2007.

1

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed her application on March 29, 2002, alleging disability since October 5, 1990, due to major depression and back pain. AR 685-690, 695-704. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 671-671, 676-679, 680. On January 14, 2004, ALJ Bert C. Hoffman held a hearing. AR 73-91. ALJ Hoffman denied benefits on February 26, 2004. AR 23-33. On November 3, 2004, the Appeals Council denied review. AR 12-16.

Plaintiff filed a previous application which was denied by an ALJ on November 6, 2001. AR 378, 279-81. ALJ Hoffman declined to reopen that decision, finding no evidence to overcome the presumption of continuing non-disability. AR 26-27.

<u>Hearing Testimony</u>

ALJ Hoffman held a hearing in Fresno, California, on January 14, 2004. Plaintiff appeared with her attorney, Gina Fazio. A Hmong interpreter assisted. AR 73.

Plaintiff testified that she did not know how old she was, but that she was born in 1955. AR 76. Plaintiff is divorced and lives by herself. She had two children who died before she came to the United States, and she adopted two boys while still in Laos. One son lives in North Carolina, and the other lives close by. The closest has six children. AR 77. Plaintiff stated that if the son in North Carolina sent her a plant ticket, she would go see him. AR 80. She has never seen any of his five children. AR 80.

Plaintiff only worked as a baby sitter in 1997. She gets food stamps and the Housing Authority helps with rent and bills. She gets help with cleaning the house and cooking. AR 82. If she feels good during the day, she gets up and likes to walk around the house. Her children take her to the store. AR 82.

Plaintiff testified that she could not baby sit her grandchildren because she hurt her left shoulder and her arm. She also hurt her back when she fell into a hole while escaping Laos. AR

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

84. When she sits, her low back hurts. AR 84. She takes medication, but prior medication made her dizzy and nauseous. During the day, Plaintiff cleans up the house if she feels okay. 85.

Plaintiff further testified that she tried to hang herself but her sister stopped her. AR 88. Her sister lives in Chico, California. Plaintiff traveled by car to Chico to visit her sister in October 2003. AR 89-90.

Medical Evidence

In June 2001, Plaintiff was treated at University Medical Center ("UMC") and underwent a fine needle aspiration procedure due to a right thyroid nodule, which showed no inflammation or malignancy. AR 766. On three occasions, Plaintiff declined a medical opinion to have it removed, stating that she would do so if it started to bother her. AR 762, 766.

On June 14, 2001, Plaintiff was treated for stomach pain that radiated to her back. AR 768-769.

In September 2001, Plaintiff complained of back pain that radiated down both legs. Upon examination, her back was normal and non-tender, and she had normal straight leg raising. AR 766. Her treating physician at UMC prescribed physical therapy for her back and scheduled a neurological consultation. AR 765.

In October 2001, Plaintiff began attending weekly group therapy at Fresno County Mental Health, and attended bi-monthly visits with a psychiatrist. AR 855. By October 23, 2001, Plaintiff reported that she was doing well on an anti-depressant regimen. AR 853.

In November 2001, Plaintiff reported that she had a hard time adjusting to life in the United States, and that she had body aches, headaches and trouble sleeping. AR 847.

In December 2001, Plaintiff reported auditory hallucinations. She was diagnosed with major depressive disorder, recurrent, and psychotic disorder not otherwise specified. AR 842.

Plaintiff underwent a chest x-ray on April 5, 2002. There was no evidence of cardiopulmonary disease. AR 772.

In a Comprehensive Assessment prepared by Mental Health in January 2002, Plaintiff reported that her depression started when she was in Laos. She said she was not working because she did not read or write English, and because right heel pain prevented her from standing for

1  long periods.  She also stated that she had chronic back, shoulder and heel pain, but her primary
2  care physician found nothing medically wrong to cause the pain.  She reported three suicide
3  attempts, the most recent in 2001, when she tried to hang herself.  She was diagnosed with major
4  depressive disorder, recurrent, moderate, post traumatic stress disorder (with delayed onset) and
5  assessed with a global assessment of functioning score of 55.  AR 830-836.
6       Plaintiff continued to suffer from insomnia and hopelessness, and had difficulty with
7  concentration on tasks and poor memory, which impaired her daily performance, through
8  October 2002.  AR 818-829, 812-816, 784, 790-804.  In January 2002, she reported that she had
9  increased fatigue and body pain during Hmong New Year.  AR 829.  She continued attending
10 group therapy sessions through Fresno County Mental Health Services.
11       On May 3, 2002, the clinician noted that during a group trip to Lost Lake, Plaintiff
12 seemed happier and talked more.  AR 811.  The following week, the group went to a strawberry
13 field, and Plaintiff was noted as having participated in group activities and being excited.  AR
14 810.  Later that month, however, Plaintiff was very sad and depressed.  AR 805.  The clinician
15 noted that Plaintiff was functioning independently and they began talking about a discharge plan.
16 AR 804.  In June 2002, the clinician again wanted to work on a discharge plan, but Plaintiff said
17 her depression was worse.  AR 800, 802.
18       On August 5, 2002, Plaintiff saw Shireen R. Damania, M.D., for a psychiatric evaluation.
19 She complained of being sad and depressed.  Plaintiff indicated that she came to the United
20 States in 1991 and denied suicidal ideations.  On mental status exam, her mood was mildly
21 depressed, her affect appropriate to thought content and situation, and impulse control and
22 tolerance were within normal limits.  There was no evidence of a thought disorder and she was
23 oriented to time, place and person, although she indicated that the date was May 2001.  Her
24 memory for recent and past recall was intact, her attention span was within normal limits, and
25 she was of average intelligence.
26       Dr. Damania diagnosed depressive disorder, not otherwise specified, and opined that
27 Plaintiff could understand, carry out and remember simple, as well as one- and two-step job
28 instructions.  She could respond appropriately to coworkers, supervisors and the public, as well

4

as usual work settings and changes in work settings if the instructions were presented simply and undimensionally.  There were no difficulties in memory, concentration, persistence or pace.  AR 724-726.

On August 12, 2002, Plaintiff saw Troy Smith, M.D., for an orthopedic consultation.  Plaintiff complained of neck pain for ten years and low back pain for 20 years that radiated to her left foot.  Upon examination, Plaintiff was in no acute distress and was able to get on and off the examining table without difficulty.  Her gait was normal.  Range of motion of her cervical and lumbar spine was limited.  There was a moderate amount of tenderness in the trapezius muscles bilaterally, without palpable spasms.  There was moderate tenderness to percussion of the lumbosacral spine, and mild tenderness over the left sciatic notice area and the left sacroiliac joint.  Straight leg raising was negative, and range of motion in her upper and lower extremities was within normal limits.  She had full range of motion of the shoulders and arms without difficulty, and there was no crepitation with movement of the shoulders.  Plaintiff demonstrated no effort with hand grip strength testing.  Her motor strength and sensation were normal.

Dr. Smith diagnosed neck pain and low back pain due to unknown etiology.  He opined that she could lift and carry 50 pounds occasionally and 25 pounds frequently, could sit without restrictions, and could stand and walk for six hours in an eight hour day.  She could kneel, squat and climb stairs.  AR 727-731.

On August 19, 2002, Plaintiff was treated at UMC for lower back pain, which she stated she had for six years.  She described her pain as a dull aching with radiation to the left thigh.  Upon examination, Plaintiff's back was normal, not tender, and her straight leg raising was normal.  AR 750.

In September 2002, Plaintiff seemed interested in the Job Option program and wanted to enroll.  AR 789.

On October 1, 2002, Dr. Raypon, a treating psychiatrist, noted Plaintiff's report of auditory hallucinations, but not visual hallucinations, delusions or suicidal ideation.  AR 785.

An October 10, 2002, chest x-ray revealed chronic scarring of the right costophrenic angle, but no acute process.  AR 747.

5

On October 16, 2002, State Agency physician Evangeline Murillo, M.D., completed a Psychiatric Review Technique Form.  She opined that Plaintiff was mildly restricted in activities of daily living, maintaining social functioning and maintaining concentration, persistence and pace.  Dr. Murillo opined that Plaintiff was capable of simple, repetitive tasks.  AR 857-870. This was affirmed on March 26, 2003.  AR 857.

Dr. Murillo also completed a Mental Residual Functional Capacity Assessment form on October 16, 2001.  She opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions.  Plaintiff was capable of performing single instructions, and could interact, socialize and adapt and respond to work changes.  AR 871-874.

On October 18, 2002, State Agency physician Brian Ginsburg, M.D, completed a Physical Residual Functional Capacity Assessment.  He opined that Plaintiff could occasionally lift 50 pounds and 25 pounds frequently, stand and/or walk for about six hours, and was unlimited in pushing/pulling.  She had no further limitations.  AR 875-882.  This was affirmed on March 23, 2003.  AR 882.

Plaintiff was involved in a motor vehicle accident on October 19, 2002, that caused her to have pain in her face, upper back and right shoulder.  AR 733-744.

On October 31, 2002, Plaintiff was energetic, happy and verbal during her group session. She appeared less sad and interacted with her peers and was involved in activities.  AR 778. However, on November 7, 2002, Plaintiff complained that she was not making progress and that she was depressed, sad, hopeless and helpless.  AR 776.

Plaintiff was treated for complaints of back pain, shoulder pain, headaches and depressed mood in January 2003.  Physical examination revealed that her chest was clear, she was alert and oriented, and had normal range of motion in her extremities.  No joint deformities were noted. AR 974.

From January to September 2003, Plaintiff reported to Dr. Raypon that she still felt depressed, was hearing voices, having concentration problems, pain, dizziness, pain in both hands, and bad dreams.  AR 888-893.  In May 2003, Plaintiff reported that she was happy because her medications were working, and she was able to eat and sleep better.  She reported

that she was able to control her anger and had skills to overcome her pain.  She looked forward to having a better life.  AR 927.

Throughout March 2003, Plaintiff complained of upper back pain, abdominal aches and pains and headaches.  AR 972.  A physician questioned whether she had fibromyalgia.  Her prescriptions were renewed and she was encouraged to exercise.  AR 972.

A June 24, 2003, chest x-ray indicated that Plaintiff's heart was slightly enlarged, and that she had mild left lung congestion with costophrenic angle blunting and minimal basilar interstitial changes.  AR 970.  The diagnosis was rule out mild congestive heart failure.

In July 2003, Plaintiff reported to the group that her sleep had improved and that she felt useful and able to engage in more socialization.  AR 913.

On July 16, 2003, Plaintiff was diagnosed with subclinical hyperthyroidism.  AR 961-962.  Her thyroid was enlarged and tender, her chest was clear, she was alert and oriented, and she had normal range of motion in her extremities.  No joint deformities were noted.  AR 961-962.

Plaintiff complained of left shoulder pain, widespread pain and depression in September 2003.  Plaintiff's chest was clear, she was alert and oriented, and she had normal range of motion in her extremities.  No joint deformities were noted.  AR 960.

In October 2003, she continued to report that she was sad, hopeless, helpless, restless, fatigued and had difficulty with memory and concentration.  AR 898.

After the ALJ decided her claim, Plaintiff submitted a psychiatric evaluation performed by Maximo A. Parayno, M.D. on August 29, 2004, to the Appeals Council.  Plaintiff described her traumas in Laos, including witnessing her sister's drowning and her father's brother-in-law's decapitation.  On mental status examination, she was disoriented to time, place and situation.  Her memory was impaired and she was not able to perform simple calculations.  Dr. Parayno concluded that Plaintiff was not able to engage in any substantial gainful activity as a result of her mental disability and was incompetent to handle funds.  AR 979- 980.  The Appeals Council concluded that it would not have changed the ALJ's decision.  The Appeals Council also rejected

the report because the evidence was over six months after the date of the ALJ's decision and because his conclusions were totally inconsistent with the evidence before the ALJ.  AR 13.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff had the severe impairments of neck and low back pain due to unknown etiology, an enlarged thyroid and depressive disorder, not otherwise specified. AR 27.  After reviewing the evidence, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work.  Specifically, she could lift 50 pounds occasionally and 25 frequently, stand, walk and sit for six hours in an eight hour day, and perform simple, repetitive tasks.  AR 27.  In making this determination, the ALJ found that Plaintiff's subjective complaints were not supported by the medical evidence.  AR 30.

Considering her capacity for medium work in combination with her age, education and work experience, and the fact that her non-exertional limitations do not significantly affect her ability to perform a full range of unskilled work, the ALJ applied Rule 203.25 to find Plaintiff not disabled.  AR 32.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Here, the ALJ determined that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability;(2) has an impairment or a combination of impairments that is considered "severe" (neck and low back pain due to unknown etiology, an enlarged thyroid and depressive disorder, not otherwise specified) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; and (5) retains the RFC to perform a significant range of medium work. AR 32-33.

Plaintiff contends that (1) it was improper for the ALJ to give the greatest weight to consultive functional assessments; and (2) the mental health record was insufficient to support the ALJ's conclusions and therefore should have been further developed.

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

**DISCUSSION**

A.  The ALJ's Review of Plaintiff's Physical Impairments

Plaintiff alleges that the ALJ did not fully review her combined impairments, which would have limited her to no more than sedentary work. In making this argument, Plaintiff contends that the ALJ should have considered medical records from her prior applications. She further contends that the ALJ erred in accepting the reports of the consultive examiners.

Insofar as Plaintiff contends that the ALJ should have reviewed prior records, an explanation of the procedural posture of this case demonstrates that she is incorrect. Prior to the instant application, Plaintiff filed an application on October 15, 1999, alleging the same onset date and impairments. After a hearing before an ALJ, the application was denied on November 6, 2001. The Appeals Council denied review on February 25, 2003. AR 26.

In his decision, the ALJ explained that the prior ALJ's decision represents an ultimate finding on Plaintiff's non-disability through November 6, 2001. Applying the doctrine of *res judicata*, the ALJ explained that he would not consider a disability onset date before November 6, 2001,[4] as the prior unfavorable decision took into account medical evidence regarding Plaintiff's inability to work due to back pain, headache, depression, high blood pressure, breathing problems and an inability to carry heavy objects. AR 27.

The ALJ then correctly explained that the prior unfavorable decision creates a presumption of continuing non-disability. To overcome this presumption, the claimant must show "changed circumstances" indicating a greater disability. *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). A changed circumstance includes a change in the claimant's age category under 20 CFR 404.1563 or 416.963, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability. Acquiescence Ruling 97-4(9).

In applying the *Chavez* rule to this case, the ALJ concluded that "after reviewing the record and the testimony, there is no evidence to overcome the presumption of non-disability."

---

[4] As Defendant points out, it appears that the ALJ inadvertently inserted the incorrect date of September 23, 1999. AR 27.

AR 27.  Therefore, contrary to Plaintiff's argument, the ALJ did not need to review the medical evidence prior to November 6, 2001.  Plaintiff does not argue that she presented changed circumstances so as to overcome the presumption of continuing non-disability.

In arguing that the ALJ failed to review the evidence documenting Plaintiff's combination of impairments, she cites evidence, both new and old, that allegedly documents "severe pathologies," such as a lumbar problem, severe pulmonary disease and right shoulder infringement.  Plaintiff is correct that the ALJ must consider limitations resulting from a medically determinable impairment or combination of impairments.  SSR 96-8p.  However, a majority of the medical evidence that Plaintiff points to in support of her argument relates to the prior decision, and is therefore evidence that was considered previously and need not be considered again.

Nor does the current evidence that was before the ALJ support Plaintiff's argument.  For example, Plaintiff points to the limited range of motion in her cervical and lumbar spine during Dr. Smith's examination.  AR 728.  However, Dr. Smith opined that despite the limited range of motion, Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, could sit without restrictions, could stand and walk for six hours in an eight hour day, and could kneel, squat and climb stairs.  AR 727-731.  Additionally, although she points to prior evidence of positive straight leg raising, sensory loss, decreased reflexes and motor weakness, there is little, if any, evidence of such symptoms in the current record before the ALJ.  Straight leg raising was negative on at least three occasions, AR 729, 750, 766.  To the extent that there was a conflict in the evidence, the ALJ was responsible for resolving it.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Indeed, the court must uphold the ALJ's decision where, as here, the evidence is susceptible to more than one rational interpretation.  *Id.*

In any event, Plaintiff's listing of symptoms does not equate to a finding of disability. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability).  Most tellingly, no physician imposed any restrictions on Plaintiff due to her alleged impairments and despite the symptoms she sets forth.

1    Plaintiff further contends that the ALJ improperly relied on the opinions of Dr. Smith and
2 Dr. Damania, the consultive examiners. In his decision, he explains that the consultive
3 examiners had the opportunity to personally interview and examine Plaintiff, and there were no
4 conflicting opinions of treating physicians. AR 30. He further explains that approximately one
5 month after the psychiatric consultive examination, Plaintiff was encouraged to participate in a
6 work preparation program by the facilitator of her therapy group. AR 789. As is the case here, a
7 consultive examiner's opinion may constitute substantial evidence when it is based on the
8 examiner's independent findings and observations. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149
9 (9th Cir. 2001).

10    The ALJ's RFC finding was supported by substantial evidence. Plaintiff's claim is
11 without merit.

12 B.    <u>Mental Health Record</u>

13    Finally, Plaintiff argues that the ALJ should have developed the mental health record.
14 She contends that the evidence was confusing and insufficient to support his conclusions.

15    An ALJ's duty to fully and fairly to develop the record is triggered only when the
16 evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the
17 evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001).

18    Here, there is no indication that the mental health record was ambiguous or inadequate so
19 as to prevent proper evaluation. The ALJ thoroughly reviewed Plaintiff's records from her
20 weekly group therapy at Fresno County Mental Health, and set forth details of numerous
21 individual sessions. AR 28-29. He reviewed the Comprehensive Assessment prepared by
22 Mental Health in January 2002, as well as her visits to Dr. Raypon. AR 28-29. The ALJ next set
23 forth the findings from Dr. Damania's consultive examination in August 2002 and the
24 conclusions reached by the State Agency physician in a Psychiatric Review Technique Form.
25 AR 30.

26    In concluding that Plaintiff had the mental capacity to perform simple, repetitive tasks
27 with one- and two-step job instructions, the ALJ gave substantial weight to Dr. Damania's
28 findings. AR 30. As explained above, this was proper. The ALJ also noted that the State

Agency physician's assessment supported this finding and that there was no contrary treating source evidence.  AR 30.

In support of her argument, Plaintiff points to evidence of her GAF score, as well as her symptoms of decreased sleep, social activity, concentration, interest, hope and energy.  She also points to her education and language barriers.  Despite this, and despite her claim that the ALJ found the mental health evidence confusing, there is no evidence that the ALJ found the evidence to be so ambiguous or inadequate to prevent proper evaluation.  To the contrary, the ALJ had before him *years* of mental health evidence, much of which, without question, demonstrated that Plaintiff suffered from depression.  The ALJ, too, found that Plaintiff's depression was a severe impairment and gave credit to this by limiting her to simple, repetitive tasks with one- and two-step job instructions.  In fact, although Plaintiff points to other symptoms, no provider imposed any limitations as a result of her mental condition.[5]

Plaintiff's argument is without merit and must be denied.

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Jo Anne B. Barnhart and against Plaintiff Khou Thor.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

---

[5] Insofar as Plaintiff attempts to rely on the August 24, 2004, psychiatric evaluation performed by Dr. Parayno, this evidence was not before the ALJ but was submitted to the Appeals Council.  Therefore, the evidence is not properly before this Court.  Regardless, the Appeals Council properly concluded that the evidence would not have changed the ALJ's findings as it was dated six months after the hearing and was completely inconsistent with a majority of the mental health record.  AR 13.

and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __**March 12, 2007**__     _____**/s/ Dennis L. Beck**_____
9b0hie                                             UNITED STATES MAGISTRATE JUDGE